[No. 33736.   Department Two.   December 27, 1956.]

MINNIE HENDER, *Appellant*, v. IVA HENDER, *Respondent*,
JAMES CALVIN HENDER *et al., Appellants*.[1]

*D. W. Moore*, for appellants.

*S. Dean Arnold*, for respondent.

MALLERY, J.—This action, to quiet title to three hundred
and twenty acres of wheat land in Garfield county, was
originally commenced by Minnie Hender against Iva Hen-
der, the former wife of her son, James Calvin Hender, for
an accounting.  The defendant, Iva Hender, cross-complained
to quiet title to the land in question and joined James Calvin
Hender as a party defendant, because he claimed an interest
therein.  The original accounting aspect of the action has
been settled and is not before the court.

The trial court quieted title to the farm in defendant, Iva
Hender, subject to a life estate in plaintiff, Minnie Hender.
Minnie Hender and her son appeal.

Minnie Hender's husband died testate in 1920.  He left
his interest in the land, which was community property,
to his son, James Calvin Hender, subject to a life estate
in his wife, Minnie Hender.  She thus owned a one-half
interest in the community property in her own right and
had a life estate in the other half by her deceased hus-
band's will.

'Reported in 304 P. (2d) 1049.

James Calvin Hender married respondent, Iva Hender, in 1922. They had three children. In 1947, respondent procured a default divorce from James Calvin Hender. By a separate property agreement, he took the farm machinery and a lease from his mother of the farm, and respondent received a house in Pomeroy and other property.

In October, 1947, he was arrested and incarcerated in Spokane for writing N.S.F. checks on his mother's bank account. While he was in jail, his mother and his son had a family conference with him and persuaded him to execute a power of attorney. The attorney in fact thereupon executed a bill of sale of the farm machinery to his mother and a release of his lease of the farm. The farm had fallen into bad condition, and respondent took over its management under a new five-year lease.

On December 9, 1947, while still in the Spokane jail, James Calvin Hender executed a quitclaim deed to his mother of his interest in the farm, consisting of the remainder over of his father's estate. It was recorded the next day. On March 10, 1948, Minnie Hender conveyed the farm by warranty deed to her former daughter-in-law, Iva Hender, in consideration of personal care and attention, reserving to herself a life estate therein.

Appellants contend that James Calvin Hender's quitclaim deed to his mother of his interest in the land was void because of his mental incompetence at the time of its execution and, therefore, should be set aside.

James Calvin Hender's irresponsibilities and mental difficulties began in 1937, when he was first committed to the Eastern state hospital for the insane. He was released after about a year. He was again committed to the hospital in 1943 and again released about a year later. Thereafter, he was committed to the Eastern state hospital for the insane on December 19, 1947, ten days after he had executed the quitclaim deed in question. This time he was released in July, 1948. His next commitment was in July, 1951, followed by a release in February, 1953.

From his first commitment to the date of trial, he always acted for himself as a competent person during the intervals

between incarcerations. These acts included contracting two marriages and maintaining an action for divorce. When at large, he has always transacted business characteristic of a competent person, even including the defense of this action, and farmed the land in question in 1946 and 1947 as his mother's tenant.

The question of his competency at the time of executing the quitclaim deed in question was submitted to the trial court as an issue in the case. The court found that he was competent when he executed it. His mental condition is obviously not stable and is characterized by alternating intervals of insanity and competency. However, at the time of the execution of the quitclaim deed, he was not under a guardianship nor commitment to the Eastern state hospital for the insane. The act was neither unnatural nor demonstrably unwise.

We think the record supports the court's finding of competency and are not prepared to overturn it. It follows that the quitclaim deed in question is valid.

No assignment of error is directed to Minnie Hender's warranty deed to the respondent.

The judgment is affirmed.

DONWORTH, C. J., HILL, FINLEY, and OTT, JJ., concur.